MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILROAD COMPANY v. ST. PAUL MERCURY-INDEMNITY COMPANY AND ANOTHER.

129 N. W. (2d) 777.

June 26, 1964—No. 38,902.

---

[10]The sentence as printed in L. 1963, c. 807, § 9, is not in italics.

*Patrick J. McPartland* and *Fordyce W. Crouch,* for appellant.
*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and
*M. J. Coyne,* for respondents.

NELSON, JUSTICE.

Suit was brought by Minneapolis, St. Paul & Sault Ste. Marie Railroad Company against St. Paul Mercury-Indemnity Company and St. Paul Fire & Marine Insurance Company upon an automobile liability policy. Judgment was entered in favor of defendants, hereinafter referred to as St. Paul Companies, following motions for summary judgment by both parties, and plaintiff, hereinafter referred to as Soo Line, appealed from that judgment.

This action arises out of a prior action brought against the Soo Line by one Oscar Ahlstrom wherein the Soo Line was held liable for personal injuries sustained by Ahlstrom and a verdict was ultimately entered against it in the amount of $175,000. The detailed facts surrounding the injury to Ahlstrom are relevant to the issues raised by this appeal but are set forth in Ahlstrom v. Minneapolis, St. P. & Sault Ste. Marie R. Co. 244 Minn. 1, 68 N. W. (2d) 873, and need not be recited at length. Suffice it to say that on October 7, 1947, Ahlstrom was an employee of O'Hara Fuel & Transfer Company. Pursuant to a contract between O'Hara and

Soo Line, he drove one of the O'Hara trucks to Soo Line's warehouse in Thief River Falls, Minnesota, to pick up freight to be delivered to consignees within the city. After several items of freight were loaded onto the truck by Ahlstrom and an employee of Soo Line named Amundson, the two men decided to load a large, top-heavy crate weighing about 900 pounds. The crate was placed on a two-wheel handcart and pulled toward the truck. Somehow the wheels of the cart became stuck. There was conflicting evidence as to the exact location. A steel plate, which was 3 feet wide, had been placed over the crack between the warehouse floor and the tailgate of the truck. The cart either became stuck while being raised onto the steel plate, or it passed over the steel plate and became wedged in a crevice between the tailgate and the rear edge of the truck bed.[1] When the men could no longer move the cart, Amundson went to get additional help, leaving the crate in a tilted position. While Ahlstrom was alone the crate began to topple. In attempting to push the crate upright, Ahlstrom was crushed.

At the time of the accident the St. Paul Companies insured O'Hara under an automobile liability policy, a copy of which was also delivered to Soo Line. Soo Line contends that this policy, which had limits of $50,000 per person, insured it for $50,000 of its liability to Ahlstrom as well as for attorney's fees incurred in defense of Ahlstrom's suit. A special endorsement was attached to the policy which read:

"It is understood and agreed that this policy is hereby extended to cover the liability, if any, of Minneapolis, St. Paul and Sault Ste. Marie Railroad Company, for the use in its business of any motor vehicle or trailer owned or operated by Ed O'Hara, Gerald O'Hara, Clair O'Hara, doing business as O'Hara Fuel and Transfer Company, and that failure of said O'Hara Fuel and Transfer Company to report newly acquired vehicles or trailers will not invalidate the coverage thereon for said Minneapolis, St. Paul & Sault Ste. Marie Railroad Company.

---

[1]At trial, Ahlstrom testified to the first version while Amundson testified to the latter version. On appeal, Ahlstrom accepted Amundson's testimony.

"It is further understood and agreed that notice of cancellation of any change in the limits or conditions of this policy must be given to Minneapolis, St. Paul & Sault Ste. Marie Railroad Company by registered mail fifteen days before cancellation or change in the limits or conditions may become effective.

"It is further understood and agreed that this endorsement shall not operate as an estoppel to prevent the payment hereunder of claims for property damage made by said Minneapolis, St. Paul & Sault Ste. Marie Railroad Company."

A similar special endorsement named the Great Northern Railway Company.

Under the policy, St. Paul Companies agreed—

"SECTION I. COVERAGE A—BODILY INJURY LIABILITY

"To PAY on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Item 5 of the declarations provided:

"* * * (c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

It was also agreed:

"SECTION II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. As respects such insurance as is afforded by the other terms of this Policy (a) under Coverages A * * * the Company shall (1) defend in his name and behalf any suit against the Insured alleging such injury * * * and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company."

Under exclusions the policy provided:

"This Policy does not apply:

\* \* \* \* \*

"(d) under Coverages A \* \* \* to bodily injury to or death of any employee of the Insured while engaged in the employment, other than domestic, of the Insured, or \* \* \* while engaged in the operation, maintenance or repair of the automobile;

"(e) under Coverage A, to any obligation for which the Insured or any company as his insurer may be held liable under any workmen's compensation law."

The section defining "insured" states:

"\* \* \* The unqualified word 'insured' wherever used in Coverages A \* \* \* includes the Named Insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the Named Insured."

The policy also contained the following conditions:

"1. Notice of Accident. Coverages A, B and C. When an accident occurs written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

"2. Notice of Claim or Suit. Coverages A and B. If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."

"6. Action Against Company. Coverages A and B. No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the In-

sured after actual trial or by written agreement of the Insured, the claimant and the Company."

"17. Assistance and Cooperation of the Insured. Coverages A, B, D, E, F, G, H, I and J. The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

The suit against the Soo Line was commenced by Ahlstrom December 14, 1950. He was represented by William DeParcq of Minneapolis and H. O. Chommie of Thief River Falls. Ahlstrom had been paid $10,000 for permanent total disability by the St. Paul Companies as workmen's compensation benefits and $9,410.50 medical expenses. Representatives of the St. Paul Companies conferred with DeParcq relative to their claim for subrogation throughout the Ahlstrom litigation. They obtained a full recovery thereof through the representation and services of Ahlstrom's attorneys. The commencement of the action against the Soo Line on December 14, 1950, was the first claim for Ahlstrom's injuries to reach the Soo Line. The Soo Line, under the foregoing circumstances, retained its own attorneys to defend against the Ahlstrom claim. It concedes that it did not advise the St. Paul Companies of its intention to invoke the automobile liability policy until after judgment had been entered in favor of Ahlstrom on March 15, 1955.

In the instant case the lower court ordered summary judgment for the St. Paul Companies on the ground that under the policy the named insured was O'Hara Fuel & Transfer Company and that exclusion (d), quoted above, precluded the Soo Line from liability coverage for bodily injury to O'Hara's employee. Clearly, if Ahlstrom had been an employee of the Soo Line, the lower court's holding would require affirmance. The issue presented, however, is

whether exclusion (d), commonly referred to as the "employee exclusion," applies to an employee of an insured other than the insured who seeks coverage. The parties herein rely primarily upon Pearson v. Johnson, 215 Minn. 480, 10 N. W. (2d) 357, and Motor Vehicle Cas. Co. v. Smith, 247 Minn. 151, 76 N. W. (2d) 486.[2]

Pearson v. Johnson, 215 Minn. 480, 482, 10 N. W. (2d) 357, 358, involved an automobile liability policy which contained the following exclusion:

"This policy does not apply:

\* \* \* \* \*

"(e) Under Coverage A, to bodily injury \* \* \* to the insured or any member of the family of the insured residing in the same household as the insured."

We held that this provision excluded from coverage the liability of an "additional insured"[3] for bodily injury to the wife of the named insured, saying (215 Minn. 483, 10 N. W. [2d] 358):

"\* \* \* That the policy gives [the word 'insured'] broader application so as to include persons driving with the named insured's consent cannot be said to wipe out the exemptions expressly incorporated into the policy to prevent the insured, that is, the named insured and his family from recovering for their own injuries."

St. Paul Companies contend on this appeal that the rule in the Pearson case is determinative of the instant controversy because the Soo Line is no more than an additional insured and the policy cannot be construed so as to nullify the exclusion prohibiting an employee of the named insured from recovering under the policy.

Motor Vehicle Cas. Co. v. Smith, *supra*, involved an automobile liability policy with an employee exclusion almost identical to exclusion (d) of the policy herein. We held that the exclusion did not ex-

---

[2]See, Annotation, 50 A. L. R. (2d) 78, 97.

[3]Most automobile liability policies, including the one involved here, contain a so-called "omnibus clause" which affords insurance protection to "additional insureds"—that is, those using or legally responsible for the use of the insured automobile with the consent of the named insured.

clude from coverage the liability of the named insured for bodily injury to an employee of an additional insured, saying (247 Minn. 156, 76 N. W. [2d] 490):

"* * * we here reject a strait-jacket interpretation of the exclusionary provisions whereby the protective coverage afforded to the *named* insured under the language of the policy as a whole is either defeated or lessened."

The Soo Line contends that the rule in the Smith case is controlling because it is a named insured and therefore its coverage cannot be lessened by the fact that the injury is to an employee of another insured.

We think that the Soo Line must be viewed as a named insured rather than merely as an additional insured. To conclude otherwise would be to ignore the special endorsement attached to the policy. The Soo Line would be an additional insured under the policy without the special endorsement by virtue of the omnibus clause of the policy. The special endorsement was obviously inserted because the coverage afforded an additional insured was considered inadequate to protect the Soo Line against liability arising from the performance of its contract with O'Hara. In view of the provisions of the special endorsement quoted above, and delivery of a duplicate policy to Soo Line, we conclude that a separate contract of insurance was created between it and the St. Paul Companies under which it was the named insured.

Soo Line being a named insured under the policy, we think the rationale of the Smith case is controlling.[4] The facts of the Smith case are not identical to those herein in that the employee injured in that case was an employee of an additional insured while Ahlstrom was an employee of another named insured, O'Hara. Since Soo Line is a named insured, the same reason applies as in the Smith case for rejecting a straitjacket interpretation of the employee exclu-

---

[4]See, also, Ginder v. Harleysville Mutual Cas. Co. (E. D. Pa.) 49 F. Supp. 745, affirmed (3 Cir.) 135 F. (2d) 215.

398

sion which defeats or lessens the protection afforded Soo Line.[5] At the very least, exclusion (d) is ambiguous and, as was said in the Smith case, must be resolved in favor of the insured. The Pearson case is distinguishable on the ground that the insured seeking coverage was an additional insured rather than a named insured.[6] The lower court erred in holding that exclusion (d) precludes Soo Line from coverage under the policy.

Although the trial court rested its decision exclusively upon the employee exclusion clause, the St. Paul Companies make several additional arguments which, if correct, would require affirmance of the judgment in their favor. Such arguments have been considered by this court when no dispute of fact is involved and the issue is solely one of law.[7] Accordingly, we proceed to consider those issues raised by the St. Paul Companies about which there appears to be no factual dispute, without deciding whether they are bound by the facts adjudicated in the Ahlstrom case under the doctrine of res judicata.

■ The St. Paul Companies argue that exclusion (e), the workmen's compensation exclusion, precludes the Soo Line from coverage under the policy. The same argument was made in Motor Vehicle Cas. Co. v. Smith, *supra,* and rejected on the strength of the reasoning that was applied to the employee exclusion. We also reject the argument in view of what has been said above in connection with the employee exclusion.

---

[5]In Farm Bureau Mutual Auto. Ins. Co. v. Smoot (S. D. W. Va.) 95 F. Supp. 600, and Employers Mutual Lia. Ins. Co. v. Tollefsen, 219 Wis. 434, 263 N. W. 376, the same result was reached when a named insured sought coverage for injury to an employee of another named insured.

[6]Neither the policy in the instant case nor the policy in Pearson v. Johnson, 215 Minn. 480, 10 N. W. (2d) 357, contained a so-called "Severability of Interests" clause as is found in most present-day policies. An opposite result might have been reached in the Pearson case if such a clause had been included in the policy. See, Risjord and Austin, *Who Is "The Insured"?* 24 U. Kan. City L. Rev. 65; Risjord and Austin, *Who Is "The Insured" Revisited,* 28 Ins. Counsel J. 100.

[7]In re Estate of Peavey, 144 Minn. 208, 175 N. W. 105; Penn Anthracite Min. Co. v. Clarkson Securities Co. 205 Minn. 517, 287 N. W. 15; Droege v. Brockmeyer, 214 Minn. 182, 7 N. W. (2d) 538.

The policy provides the Soo Line with liability insurance for bodily injury arising out of the "use" of the O'Hara truck involved herein. Item 5 of the policy's declarations states that the word "use" includes "loading." St. Paul Companies contend that the injury to Ahlstrom did not arise from the loading of the insured vehicle.

In determining this issue the controlling consideration is whether the cause of the accident was a peril related to the hazards of loading the insured vehicle. Gamble-Skogmo, Inc. v. St. Paul Mercury Ind. Co. 242 Minn. 91, 64 N. W. (2d) 380. It is clear from our decision in the Ahlstrom case that the cause of the injuries to Ahlstrom was either Amundson's failure to warn Ahlstrom of the crate's top-heavy nature or the fact that Amundson left the crate in a tilted position knowing it to be top-heavy. However, since neither the Ahlstrom case nor the lower court herein determined which of these was the actual cause, it would be beyond our scope of review to decide the matter. We must consider each possible cause hypothetically in connection with the question of whether Ahlstrom's injuries arose out of the loading of the truck, deciding the latter only if the same result would be reached with either cause.

Assuming that the cause of Ahlstrom's injuries was Amundson's failure to warn Ahlstrom of the crate's top-heavy nature, the St. Paul Companies take the position that this failure was not a peril related to the hazards of loading the truck. In St. Paul Mercury Ind. Co. v. Standard Acc. Ins. Co. 216 Minn. 103, 11 N. W. (2d) 794, we noted that although automobile risks are incidental to the operation of a business, for purposes of insurance a line is drawn between risks which relate to the use of an automobile and risks incident to the general operation of a business. The St. Paul Companies contend that Amundson's failure to warn was a general business risk, citing Gamble-Skogmo, Inc. v. St. Paul Mercury Ind. Co. *supra*. In that case one Lyngstad was injured while assisting an employee of Gamble-Skogmo in assembling a farm implement preparatory to its being unloaded from a truck. The cause of accident was Gamble-Skogmo's failure to adequately instruct its employee as to the proper and reasonably safe way in which to assemble the implement; the employee

himself was not negligent. In holding that the injuries to Lyngstad did not arise out of the unloading of the truck, we said (242 Minn. 111, 64 N. W. [2d] 392):

"* * * standing alone the risk of failing to properly and adequately instruct employees regarding their duties during employment is a general business risk unrelated to the use or unloading of an automobile. The mere fact that the negligently omitted instructions concerned one step in the proper manner of performing a task necessary to unloading an object from the truck does not transform an otherwise general liability risk into an automobile hazard. The negligent act causing the injury to Lyngstad was removed from the unloading operations both in the sense that it occurred prior to the accident and also some distance away from the scene of the accident. Any connection it does have with the Jensen truck or the unloading operations therefrom is too remote to allow us to hold that the injurious effects it caused arose out of the use or unloading of an automobile within the terms of the * * * policies."

We think the Gamble-Skogmo case must be distinguished from the facts herein. Gamble-Skogmo's failure to instruct its employee occurred prior to, and some distance from, the accident. Moreover, the instructions which should have been given were not peculiarly related to the hazards of unloading the farm implement. Although Gamble-Skogmo's failure to instruct manifested itself when the unloading process was about to commence, Gamble-Skogmo's duty to instruct existed because the hazards connected with the employee's overall performance of his job—loading and unloading being merely a part thereof—demanded that the employee have a knowledge of how to assemble the farm implement. In the instant case Amundson's failure to warn occurred at the time and place of the loading process. And, more important, the warning which should have been given was integrally related to the hazards of loading the crate. Unlike Gamble-Skogmo, Amundson had no general duty to inform Ahlstrom of the crate's top-heavy nature. Whatever duty he owed Ahlstrom arose as a result of the foreseeable danger which was inherent in the immediate

situation—wheeling a 900-pound crate, which Ahlstrom did not know to be top-heavy, over a steel plate.

In such circumstances we cannot agree with the St. Paul Companies that Amundson's failure to warn was a general business risk. Where the perils of loading a motor vehicle create a duty to warn another, the failure to so warn would appear to be as much a part of the hazards of the loading operation as the negligent handling of articles being loaded. If Amundson was under a duty to warn Ahlstrom, we are of the opinion that it arose out of the loading process, and, as a consequence, his failure to fulfill the duty was a hazard incident to loading the vehicle.

The other possible cause of Ahlstrom's injuries was the fact that Amundson left the crate in a tilted position when it became stuck and went for assistance. The St. Paul Companies contend that, even if this were the cause, Ahlstrom's injuries did not arise out of the loading operation because the loading process was interrupted and had temporarily ceased when the handcart became stuck. Several cases are cited by them for the principle that the process of unloading ends when the goods have come to rest.[8] It is argued by analogy that the loading process is not in progress when the goods are at rest.

In State Auto. & Cas. Underwriters v. Casualty Underwriters, 266 Minn. 536, 124 N. W. (2d) 185, we expressly rejected the so-called "at rest" doctrine as a standard for determining whether an unloading operation has ceased. The following remarks therein apply with equal force to the position taken by the St. Paul Companies with respect to the loading process (266 Minn. 544, 124 N. W. [2d] 190):

"To hold in every case that unloading ceases the moment an article reaches the ground, even though the truckdriver is to pick it up again and carry it into the place where it is to be delivered to the consignee, but that it continues until actual delivery if the article happens to be of a nature that ordinarily would not be deposited until

[8]St. Paul Mercury Ind. Co. v. Standard Acc. Ins. Co. 216 Minn. 103, 11 N. W. (2d) 794; Stammer v. Kitzmiller, 226 Wis. 348, 276 N. W. 629.

delivery is actually completed, leads to nothing but absurdity. The rule ought to be that * * * the parties intended to cover all hazards occasioned while the operator of the truck is in control of the parcel, unless his operation contemplates the performance of an act separate and apart from that ordinarily incident to the process of unloading. The weight and nature of the article and the probability that it may momentarily be rested on the ground before final delivery are circumstances which are too tenuous to form the basis of liability."

In the instant case, likewise, we think it unreasonable to hold that the accident to Ahlstrom was outside the "loading and unloading" clause simply because it occurred when the crate was at rest. The pertinent question is whether the cause of the accident was a hazard occasioned while Amundson was in control of the crate incident to loading it onto the truck. The cause of the accident herein clearly appears to be such a hazard, whether it is Amundson's failure to warn or his act of leaving the crate in a tilted position when it became stuck. Both acts of Amundson occurred while he was in control of the crate and both were incident to the loading process.

It is to be noted that the exact position of the crate when it fell is not clear from the Ahlstrom case. Either it was on the truck or it was on the warehouse floor near the steel plate. The St. Paul Companies suggest that the loading process had not yet begun if it was on the warehouse floor. Just as the unloading process does not cease the moment the goods pass over the edge of the truck, so the loading process does not commence at that point. See Maryland Cas. Co. v. New Jersey Mfrs. Cas. Ins. Co. 48 N. J. Super. 314, 321, 137 A. (2d) 577, 581, affirmed, 28 N. J. 17, 145 A. (2d) 15, in which the court said that—

"* * * it matters not the slightest that he may have stopped his fork lift just short of the back of the truck and from that point raised the roll of paper to the loading point. What he was doing was part of the complete operation of loading."

In Bituminous Cas. Corp. v. Travelers Ins. Co. (D. Minn.) 122 F. Supp. 197, the insurance company took the position that before a case can come within the loading and unloading provisions of an

automobile policy, the instrumentality causing the damage must be the truck itself or the operator of the truck. The court, however, said (122 F. Supp. 200):

"* * * But the injury to Williams would not have occurred but for the loading of the truck, and since Travelers expressly insured against liability arising out of the loading, without regard to who was doing the loading, it would follow that Wegman in loading the truck and using it for that purpose, was an insured within the meaning of the express terms of the policy and that the incident was caused by the operation, that is, in the process of loading the truck by the insured."

The St. Paul Companies contend that this action is barred by the statute of limitations, Minn. St. 541.05(1), which requires actions upon a contract as to which no other limitation is expressly prescribed to be commenced within 6 years. The statute, it is argued, begins to run at the time of breach, and, if the St. Paul Companies in fact breached the insurance contract, they did so when they failed to investigate the October 7, 1947, accident 7½ years before the Soo Line commenced the present action on June 6, 1955.

The Soo Line contends that since the insurance contract is one of indemnity it had no right to collect indemnity from the St. Paul Companies prior to the time that it had sustained a fixed and determinable loss. On that ground the Soo Line claims that it has not been barred by the statute of limitations, citing Aetna Cas. & Surety Co. v. Bros, 226 Minn. 466, 33 N. W. (2d) 46; Trandum v. Trandum, 187 Minn. 327, 245 N. W. 380; Patterson v. Adan, 119 Minn. 308, 138 N. W. 281, 48 L. R. A. (N.S.) 184; and 45 C. J. S., Insurance, § 930.

As quoted above, the policy herein provides that no action shall lie against the company until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement. We do not see how these express terms of the policy can be ignored. The general rule is that liability on an insurance contract containing such a "no action" clause does not accrue until judgment has been entered against the insured. 45 C. J. S., Insurance, § 930. Ahlstrom's judgment was

entered March 15, 1955, and this action was commenced June 6, 1955.

The St. Paul Companies also contend that they are relieved of liability because the Soo Line failed to comply with the condition of the policy, quoted above, relating to notice of the accident. The Soo Line concedes that it gave no notice to the St. Paul Companies but asserts that the notice requirement was fulfilled when O'Hara notified the St. Paul Companies of the accident on the day it occurred.

The policy states that the notice "shall contain * * * reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses." It is claimed that the notice given by O'Hara clearly provided St. Paul Companies with such information.

We do not think it material that notice was given by O'Hara rather than the Soo Line. In Pallasch v. United States Fidelity & Guaranty Co. 329 Ill. App. 257, 261, 67 N. E. (2d) 883, 885, the following was quoted from Appleman, Automobile Liability Insurance, p. 240:

"It does not matter who gives the notice to the insurer, as long as notice is actually given of the occurrence of the accident or the pendency of the suit."

The policy also states that the notice "shall contain particulars sufficient to identify the Insured." Whether the notice given by O'Hara was sufficient in this respect is, we think, a question which must be decided by the trial court in the first instance. It is a question involving factual matters which are not clearly settled in the record before us and are likely to be disputed by the parties. The St. Paul Companies, it is to be noted, insured O'Hara under both an automobile liability policy and a workmen's compensation policy. Questions arise as to the general effect of the notice given by O'Hara directed toward compliance with the requirements of the workmen's compensation insurance policy. Since these matters were not tried or determined by the trial court and do not appear free from dispute in the record before us, any decision by this court thereon is at present beyond our scope of review.

The St. Paul Companies, it should be noted, raise other defenses. They contend that the judgment entered by the trial court should be affirmed because the Soo Line did not comply with conditions of the policy relating to notice of claim and tendering of defense to the insurer; and because the Ahlstrom case is not res judicata as to the Soo Line's liability and the Soo Line refuses to plead and prove its liability.[9]

The Soo Line contends that the St. Paul Companies knew in ample time that a suit had been instituted against the Soo Line by Ahlstrom, because they were charged with notice of the acts of Ahlstrom's attorneys with whom they had made arrangements prior to and during the pendency of the Ahlstrom litigation. The Soo Line contends that the St. Paul Companies, in arranging for representation by Ahlstrom's counsel to recoup their payments made under the workmen's compensation policy issued to O'Hara Transfer, lost any rights they may have had as to notice of suit and the immediate forwarding to them of the pleadings in the suit Ahlstrom had commenced against the Soo Line. See, In re Application of Juran, 178 Minn. 55, 226 N. W. 201; Riley v. Pearson, 120 Minn. 210, 139 N. W. 361, L. R. A. 1916D, 7.

The rule that notice to an agent is notice to his principal is applicable to attorney and client. 2 Dunnell, Dig. (3 ed.) § 670. It was held in Indemnity Ins. Co. of North America v. Forrest (9 Cir.) 44 F. (2d) 465, that failure to forward to insurer process and pleadings served on insured's chauffeur constituted no defense where insurer had actual notice of the commencement of the action.

It was held in Frank v. Nash, 166 Pa. Super. 476, 71 A. (2d) 835, that failure to furnish suit papers to liability insurance carrier does not void the policy in absence of prejudice to the insurer, and prejudice does not exist per se.

---

[9]The Ahlstrom case appears as an exhibit in the record. The St. Paul Companies do not dispute the facts of the accident as they appear therein; they only dispute the res judicata effect of the Ahlstrom case as to the Soo Line liability. As a result we considered the "loading" question above apart from the problem of res judicata.

The Soo Line contends that the St. Paul Companies cannot complain that they were not given control in the defense of the Ahlstrom case since they were on the other side of the case in which the Soo Line had considerably more at stake than the policy limit of the insurance contract. The Soo Line contends that while the St. Paul Companies were not named as plaintiffs in the Ahlstrom case they were in reality undisclosed parties in interest and shared in the proceeds of the judgment and also in being relieved of any further liability to Ahlstrom for medical care. The Soo Line contends that this all came about while the St. Paul Companies shared in the control of the attorneys who established the Soo Line's liability in the case brought by Ahlstrom and cites the following authorities in support of its contention that they are bound by the judgment therein: Vane v. C. Hoffberger Co. 196 Md. 450, 77 A. (2d) 152, 22 A. L. R. (2d) 1450; Carlock v. Loyd, 43 S. D. 611, 181 N. W. 835; and 50 C. J. S., Judgments, §§ 686, 782.

The record is clear that the St. Paul Companies were subrogated to the rights which O'Hara and Ahlstrom had against the Soo Line. The judgment in the Ahlstrom case clearly establishes the Soo Line's liability to Ahlstrom. The question then arises whether the judgment in the Ahlstrom case is in any manner binding on the St. Paul Companies as to the legal and factual issues determined therein.

■ In connection with a summary judgment, an appellate court normally has to examine the record with two fundamental questions in view: (1) Whether there were any material issues of fact to be determined, and (2) whether the court erred in its application of the law. State Tax Comm. v. Consumers Market, Inc. 87 Ariz. 376, 351 P. (2d) 654, 80 A. L. R. (2d) 1216.

It appears that any proper decision on the issues discussed herein ought to include determination of the following: (a) Whether or not the facts litigated in the Ahlstrom case are binding on the St. Paul Companies; (b) whether or not the accident occurred within the loading and unloading provision of the St. Paul Companies' policy insuring the Soo Line; (c) the adequacy of the notice of the accident and the notice of the claim; (d) whether or not the Soo Line cooperat-

ed with the St. Paul Companies within the meaning of the policy; (e) whether or not the Soo Line is estopped by conducting its own defense without claiming coverage until after judgment was entered; (f) the defense of the statute of limitations; and (g) all other issues properly framed by the pleadings.[10]

This case is therefore reversed and remanded for further proceedings in the trial court to determine the issues referred to and discussed in this opinion.

Reversed and remanded.

---

[10]As to compliance with notice of suit and cooperation provisions, see O'Morrow v. Borad, 27 Cal. (2d) 794, 167 P. (2d) 483, 163 A. L. R. 894; as to the res judicata effect of the Ahlstrom case, see Restatement, Judgments, § 107, and cases cited in 1954 Supplement.