## FIDELITY AND CASUALTY COMPANY OF NEW YORK v. ALLSTATE INSURANCE COMPANY.

146 N. W. (2d) 869.

December 2, 1966—No. 39,807.

*Lasley, Foster & Roehrdanz,* for appellant.

*O'Connor, Green, Thomas, Walters & Kelly* and *Kenneth W. Green,* for respondent.

SHERAN, JUSTICE.

The appeal is from a judgment of the district court.

The issue for decision is whether an accident which occurred on October 4, 1958, at Madison Lake, Minnesota, arose out of the ownership, maintenance, or use of a truck insured by Allstate Insurance Company (Allstate). The relevant facts are these:

On October 4, 1958, at about 11 a. m., Russell Christensen drove his truck filled with soybeans to the Archer Daniels Midland (hereinafter called A.D.M.) elevator at Madison Lake intending to unload there. At the elevator there was a temporary receptacle (termed a "hopper") into which the beans were to be dumped. It was about 5 feet square and consisted of 20-inch sides placed on the ground. With his truck in a position on the A.D.M. premises where the soybeans could be dumped into this hopper by force of gravity, Christensen alighted from the vehicle and began to unfasten the tailgate. He was assisted by George Frederick, an employee of A.D.M. An auger extended from ground level inside the hopper to the top of a nearby storage facility. In motion, it conveyed the soybeans to the top of and into the storage facility. But, when Christensen began his attempt to lower the tailgate, the auger was not in motion.

Because lowering the tailgate proved difficult, Christensen stepped inside the hopper and near the auger. He was in that position when the tailgate dropped and beans began to pour from the truck. At that moment, Frederick, observing that beans were beginning to pour from the truck into the box, signaled another A.D.M. employee, James Nelson, to put the auger in motion. Nelson did so. Christensen's foot was caught in the rotating auger and he sustained injuries as a consequence. At the time of this accident only about 10 of the truck's 80 bushels of beans had entered the hopper and beans were still pouring into it.

Christensen made a claim against A.D.M. on the theory that the personal injury was caused by the negligence of the elevator employees in putting the auger in motion without warning of the hazard at a time when Christensen was in a position of apparent danger. Fidelity and Casualty Company of New York (hereinafter called Fidelity) settled Christensen's claim for $4,800. It did so as insurer under a policy of public liability insurance issued to A.D.M. and covering the premises where the accident

occurred. Now, standing in the shoes of A.D.M., it seeks reimbursement from Allstate on the theory that that company is primarily liable in this situation because the claim for damages was one "caused by accident and arising out of the ownership, maintenance or use" of the Christensen truck which Allstate insured.

The critical finding of the trial court reads as follows:

"* * * [T]he injuries sustained by * * * Christensen were not in fact caused by or owing to the ownership, maintenance, use or operation of the Christensen vehicle, or caused by or resulting from the loading or unloading of said Christensen vehicle, but on the contrary, were solely caused by and resulted from the negligent operation of Archer-Daniels-Midland premises by Archer-Daniels-Midland employees."

Judgment having been entered in favor of Allstate, the problem on appeal becomes one of deciding whether the determination of the trial court was erroneous in light of such recent cases as State Auto. & Cas. Underwriters v. Casualty Underwriters, Inc. 266 Minn. 536, 124 N. W. (2d) 185, and Minneapolis, St. P. & S. S. M. R. Co. v. St. Paul Mercury-Ind. Co. 268 Minn. 390, 129 N. W. (2d) 777.

In the first of these cases the sum in controversy was paid in settlement of a personal injury which occurred when a pedestrian was injured by a sidewalk trapdoor being opened from below to permit a truck operator to deposit freight in the basement of the consignee's premises adjoining the sidewalk. We held there that the accident arose out of the ownership, maintenance, and use of the delivery truck including the unloading thereof because the truckdriver had the responsibility for placing the freight in the basement of the building adjoining the sidewalk and the raising of the trapdoor was an integral part of this process. We quoted with approval the language of Connecticut Ind. Co. v. Lee (1 Cir.) 168 F. (2d) 420, 425:

"* * * The opening of the elevator doors was necessary in order to carry out the delivery and it was an integral part of the unloading process. We think that this is sufficient to establish the causal relation between unloading and the accident * * *."

In disposing of the matter we articulated this as the test of coverage (266 Minn. 544, 124 N. W. [2d] 190):

"* * * The rule ought to be that, under language such as we have here, the parties intended to cover all hazards occasioned while the operator of the truck is in control of the parcel, unless his operation contemplates the performance of an act separate and apart from that ordinarily incident to the process of unloading."

In Minneapolis, St. P. & S. S. M. R. Co. v. St. Paul Mercury-Ind. Co. 268 Minn. 390, 129 N. W. (2d) 777, the sum in controversy was paid on account of a personal injury which occurred when a crate tipped over and injured an employee of a trucking company. The court there held that the accident arose out of the loading of the truck because "the cause of the accident was a hazard occasioned while Amundson [an employee of the railroad assisting with loading] was in control of the crate incident to loading it onto the truck." 268 Minn. 402, 129 N. W. (2d) 785.

The distinguishing feature of State Auto. & Cas. Underwriters v. Casualty Underwriters, Inc. *supra,* as applied to the current problem comes from the fact that there we considered the transfer of the freight from the truck to the basement of the consignee's place of business to be an essential part of the process of unloading. We said in effect that the freight was not "unloaded" until put in the place where the hauler intended it to be. Dealing with the reverse situation in Minneapolis, St. P. & S. S. M. R. Co. v. St. Paul Mercury-Ind. Co. *supra,* we said in effect that the loading operation *commenced* when the employee took possession of the freight for the purpose and with the intent of loading it.

So considered, these cases serve to highlight the distinguishing characteristic of the problem before us because here the removal of the soybeans from the place where Christensen intended to deposit this grain was not an integral part of the unloading process. The record supports a finding that the unloading operation was completed so far as Christensen was concerned when the soybeans were permitted to drop by force of gravity at the place designated by the operator of the elevator. The purpose of the rotating auger as placed by A.D.M. on its premises was primarily to expedite the storage of the delivered beans. This function,

we believe, was more directly related to the storage function of the elevator company than to the unloading of the truck. Christensen's contemplated delivery was completed by unloading the beans on the ground at the receptacle. The removal of the beans from that point to the storage facility was A.D.M.'s responsibility and part of its business operations.

In concluding that the determination of the trial court should be affirmed, we recognize that the case in some respects presents a borderline problem. This is so because the hopper into which the beans were to have been put was not sufficiently large to contain the 80 bushels of beans being unloaded without transfer of some of the beans from the hopper to the storage bins through the medium of the auger. Nevertheless, in our judgment the trial court was justified in concluding that the process by which the beans were lifted from the place of unloading to a place of relatively permanent storage was not an integral part of the unloading process and that the lifting operation for which the auger was used constituted an act "separate and apart from that ordinarily incident to the process of unloading" within the meaning of our decision in State Auto. & Cas. Underwriters v. Casualty Underwriters, Inc. 266 Minn. 536, 544, 124 N. W. (2d) 185, 190.

Affirmed.