James DREWELOW and Milbank Mutual
Insurance Company, Appellees,

v.

IOWA NATIONAL MUTUAL INSUR-
ANCE COMPANY, Appellant.

No. 78–1851.

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1979.

Decided April 19, 1979.

Mark N. Stageberg, Lommen, Cole &
Stageberg, Minneapolis, Minn., argued, for
appellant.

Thomas C. Athens, Wheaton, Minn., ar-
gued, for appellees.

Before ROSS, STEPHENSON and HEN-
LEY, Circuit Judges.

PER CURIAM.

Iowa National Mutual Insurance Compa-
ny (Iowa National) appeals the judgment of
the district court [1] awarding James Drewe-
low and Milbank Mutual Insurance Compa-
ny (Milbank Mutual) indemnity in the
amount of $16,500.00. We affirm.

This suit arose out of an accident and
resulting injury to James Drewelow's nine
year old son, Robbie, which occurred while
Drewelow was transferring grain from a
dumptruck to a storage bin located on his
Minnesota farm. Before the district court
the parties entered a stipulation of facts
which sets forth the following account of
the events surrounding this accident.

Drewelow orally contracted with Larry
Hills to "custom combine" Drewelow's
grain crop. Hills agreed to combine the
grain, haul it to the Drewelow farm and
transfer it to storage bins located in the
farm yard. He provided a combine and a
dumptruck to facilitate this operation.

---

1. The United States District Court for the District of Minnesota, The Honorable Edward J.
Devitt, Chief Judge, presiding.

Drewelow provided an additional truck and a portable hopper-auger assembly for transferring the grain from the trucks to the storage bins. Hills' dumptruck was insured by Iowa National, with the terms of the policy providing liability coverage for bodily injury or property damage arising out of the use, including the loading and unloading, of the truck. Drewelow's farm was insured under a general liability policy issued by Milbank Mutual.

On July 26, 1975 Hills arrived at the Drewelow farm without a helper. Drewelow agreed to assist him and drove the day's first load of grain from the field to the farm yard. He then placed the truck in position, raised the bed and began pouring grain into the hopper. Drewelow monitored this operation, raising the truck bed a few degrees at a time so that the truck would empty slowly. The auger mechanism attached to the bottom of the hopper carried the grain to the storage bin.

While the truck was emptying, Drewelow carried on a conversation with Robbie who was also present in the farm yard. Drewelow told Robbie to go to the farm house and inform the other family members that Drewelow would take the family on an outing when he finished unloading the truck. Robbie did this but returned to the truck unnoticed by his father and climbed up on the rim of the hopper so that he could look into the truck bed. While attempting to climb down, he fell into the hopper and became entangled in the exposed auger. Drewelow, who was raising the truck bed at the time, did not see the accident but heard his son's screams and rushed to extricate him. Robbie sustained substantial injuries to his foot.

Drewelow brought a products liability suit in his son's name against the manufacturers and sellers of the hopper and auger. These defendants in turn commenced a third-party action against Drewelow alleging contributory negligence on his part in failing to supervise the unloading process properly. Milbank Mutual defended Drewelow in this third-party action and simultaneously joined with him in bringing a declaratory judgment action in Minnesota state court against Iowa National. There they sought a declaration that Iowa National's policy on Hills' truck provided primary coverage for Drewelow's liability since he was engaged in unloading that truck when the accident occurred. Iowa National removed the declaratory judgment action to the United States District Court pursuant to 28 U.S.C. § 1441 on the basis of the district court's diversity jurisdiction under 28 U.S.C. § 1332 and its jurisdiction over declaratory judgment actions under 28 U.S.C. § 2201. Subsequent to removal, Milbank Mutual contributed $16,500.00 in Drewelow's behalf toward a settlement of Robbie's claims. Drewelow and Milbank Mutual then amended their complaint seeking indemnity from Iowa National in the amount of their settlement payment.

The case was tried to the district court without a jury on the above noted stipulation of facts. Iowa National further stipulated the $16,500.00 settlement figure was reasonable and that its policy on Hills' truck was primary if it covered Drewelow's liability. The parties filed cross-motions for summary judgment, and the district court heard oral arguments on these motions. The court granted summary judgment in favor of Drewelow and Milbank Mutual, supporting its order by findings of fact and conclusions of law.

In its written findings the court initially found that the oral agreement between Drewelow and Hills created a duty in the truck driver (Drewelow in this instance) to deliver the grain to the farm storage bins. This task had not been completed and the grain was still in Drewelow's control, i. e., being unloaded, when Robbie sustained his injuries. Secondly, Drewelow was found to have negligently performed his duties as truck driver because he failed to properly supervise the unloading process. Finally, Drewelow, who was using the truck with Hills' permission, was deemed an insured under Iowa National's policy; and that policy was consequently held primary as to his liability.

On appeal Iowa National argues that the district court erroneously applied Minnesota law in extending its policy coverage to Robbie Drewelow's accident. More specifically, it urges that its policy coverage, which admittedly extended to personal injuries arising from the *unloading* of the insured truck, terminated at the point where the grain fell from the truck into the hopper. Or, in other words, the augering process and perforce any injuries arising from that process did not come within the meaning of the policy's "unloading clause."

The Minnesota Supreme Court has had frequent occasion to address the scope of coverage under unloading clauses in motor vehicle liability insurance policies. *See, e. g., Fidelity & Cas. Co. of N. Y. v. Allstate Ins. Co.*, 275 Minn. 316, 146 N.W.2d 869 (1966); *State Auto. & Cas. Underwriters v. Cas. Underwriters, Inc.*, 266 Minn. 536, 124 N.W.2d 185 (1963); *Gamble-Skogmo, Inc. v. St. Paul Mercury Indem. Co.*, 242 Minn. 91, 64 N.W.2d 380 (1954); *St. Paul Mercury Indem. Co. v. Standard Accident Ins. Co.*, 216 Minn. 103, 11 N.W.2d 794 (1943); *Franklin Co-Op. Creamery Ass'n v. Employers' Liability Assur. Corp.*, 200 Minn. 230, 273 N.W. 809 (1937). This court analyzed these decisions in *Liberty Mut. Ins. Co. v. Johnson, Drake & Piper, Inc.*, 390 F.2d 410 (8th Cir. 1968), and distilled guidelines for determining unloading clause coverage on a case-by-case basis.

■ *Liberty Mutual* first teaches that we must establish the boundaries of the unloading process in the case at bar. In this respect the Minnesota Supreme Court has stated

> [u]nloading, as it is used in an insurance policy of this kind, may cease when the operator of the truck turns the merchandise over to someone else and has nothing further to do with it, or when . . . he commences an operation that is separate and distinct from the unloading process which has been completed.
>
> .    .    .    .    .
>
> The rule ought to be that . . . the parties intended to cover all hazards occasioned while the operator of the truck is

in control of the parcel, unless his operation contemplates the performance of an act separate and apart from that ordinarily incident to the process of unloading.

*State Auto. & Cas. Underwriters v. Cas. Underwriters, Inc., supra*, 124 N.W.2d at 189–90. The import of this language was clarified by the Minnesota court in its most recent pronouncement on the unloading clause issue.

> The distinguishing feature of *State Automobile & Casualty Underwriters v. Casualty Underwriters, Inc., supra* . . . comes from the fact that there we considered the transfer of the freight from the truck to the basement of the consignee's place of business to be an essential part of the process of unloading. We said in effect that the freight was not 'unloaded' until put in the place *where the hauler intended it to be.* (Emphasis added.)

*Fidelity & Cas. Co. of N. Y. v. Allstate Ins. Co., supra*, 146 N.W.2d at 871. In view of the above language in *State Automobile* and *Allstate*, we determined in *Liberty Mutual* that under Minnesota law unloading clause coverage generally terminates when the truck driver releases his control over the freight at the intended place of delivery.

■ We have reviewed the record now before us and believe the district court correctly applied this principle. Drewelow and Hills agreed the truck driver would deliver the grain to the farm's storage bins. The driver was required to operate the auger in unloading the truck and he retained control over the grain until it fell into the storage bins. Thus, the operation of the auger was clearly a part of the unloading process.

In arguing to the contrary, Iowa National relies primarily on the *Allstate* case. There a truck driver was injured while delivering a load of soybeans to a commercial storage facility. He was standing inside a hopper unfastening the tailgate of his truck when a storage facility employee negligently turned on the attached auger. The Minnesota court held the storage facility's liability

insurance policy primary to the liability policy on the truck because "the lifting operation for which the hopper was used constituted an act 'separate and apart from that ordinarily incident to the process of unloading . . . .'" *Fidelity & Cas. Co. of N. Y. v. Allstate Ins. Co., supra,* 146 N.W.2d at 872, *citing State Auto. & Cas. Underwriters v. Cas. Underwriters, Inc., supra,* 124 N.W.2d at 190. A careful reading of *Allstate* reveals that it is fully consistent with our decision. The operation of the auger in *Allstate* was not a part of the unloading process because there the truck driver completed his delivery by pouring the soybeans into the hopper; he was not responsible for transporting them to a bin for storage. As the *Allstate* court noted,

> [t]he record supports a finding that the unloading operation was completed so far as [the truck driver] was concerned when the soybeans were permitted to drop by force of gravity at the place designated by the operator of the elevator. . . .
> The removal of the beans from that point to the storage facility was [storage facility's] responsibility and part of its business operations.

*Fidelity & Cas. Co. of N. Y. v. Allstate Ins. Co., supra,* 146 N.W.2d at 872. Here, however, Drewelow was responsible for operating the auger and had a duty to see that it was operated safely.

Once the parameters of the unloading process are established, it is then necessary to determine whether the injury in question was caused by or resulted from that process. *Liberty Mut. Ins. Co. v. Johnson, Drake & Piper, Inc., supra,* 390 F.2d at 417–18. The *Allstate* court, for example, found that the truck driver's injury was

"solely caused" by the storage facility's negligent operation of the auger, a function which was outside the unloading process. *Fidelity & Cas. Co. of N. Y. v. Allstate, supra,* 146 N.W.2d at 871. Here the district court concluded that Robbie's injury was caused by Drewelow's negligent failure to supervise properly the operation of the auger, which was a part of the unloading process. There is ample support in the record for that determination [2] and we cannot say that it is clearly erroneous. Fed.R. Civ.P. 52(a).

In sum we conclude that the district court correctly applied Minnesota law in granting appellees' motion for summary judgment.

Affirmed.

2. Iowa National argues the district court erroneously assumed that it agreed with Milbank Mutual's theory of Drewelow's negligence and that the court impermissibly based its decision on this assumption. We find no support in the record for this argument. At oral argument on the parties' cross-motions for summary judgment, counsel for Iowa National clearly stated his disagreement with the proposed negligence theory and further stated his view that Drewelow's alleged negligence was irrelevant to the issue of policy coverage. At the close of this discussion, all parties agreed that summary judgment was in order. We have no reason to believe the district court misunderstood counsel's position and presume that the court based its finding of negligence on the parties' stipulation of facts. As we discuss above, the court's finding that Drewelow was negligent in unloading the truck was relevant to the issue of causation. *See* Judge Mehaffy's treatment of this point in *Liberty Mutual, supra,* 390 F.2d at 417–19.