Roger PETTICREW

v.

**ABB LUMMUS GLOBAL, INC. and Mobil Corporation.**

No. CIV. A. 97–3366.

United States District Court, E.D. Louisiana.

June 23, 1999.

John M. Robin, John M. Robin, Covington, LA, for Plaintiff.

Richard G. Duplantier, Jr., Michael Joseph Ecuyer, Galloway, Johnson, Tompkins & Burr, New Orleans, LA, Don Keller Haycraft, Brett D. Wise, Liskow & Lewis, New Orleans, LA, for Defendant Mobile Corp.

Roy Edward Blanchard, Sidney W. Degan, III, John C. Enochs, Degan, Blanchard & Nash, New Orleans, LA, John Edward Faherty, Jr., Renee C. McGinty & Associates, New Orleans, LA, for Defendants Dickson GMB Intl., American Intern.

Arthur H. Leith, Sarah S. W. Mahoney, McGlinchey Stafford, PLLC, New Orleans, LA, Peter L. Hilbert, Jr., Darnell Bludworth, Michael H. Pinkerton, Sher Garner Cahill Richter, Klein McAlister & Hilbert, LLC, New Orleans, LA, for Defendant Offshore Technical Services, Inc., Cigna Ins. Co.

McNAMARA, Chief Judge.

Before the court are the following motions:

(1) **Motion for Summary Judgment** filed by Defendants, ABB Lummus Global, Inc. ("ABB") and Mobil Corporation ("Mobil") against Defendants Dickson GMP International ("Dickson"), American International Underwriters ("AIU"), and Lexington Insurance Co. ("Lexington"). Dickson and AIU filed a joint opposition. Lexington also filed an opposition.

(2) **Cross Motion for Summary Judgment** filed by Lexington against ABB and Mobil. ABB untimely filed an opposition. Although counsel for Lexington objected to the opposition as untimely, the court has considered the opposition.[1]

The motions, set for hearing on Wednesday, June 9, 1999, are before the court on briefs without oral argument. Having considered the memoranda of counsel and the applicable law, the court now rules.

## BACKGROUND

In 1995, Mobil Producing Unlimited[2] entered into a contract with ABB Lummus Crest for the construction of an offshore oil platform off the coast of Nigeria (the "NGL Recovery Project").[3] In April of 1997, a Subcontract Agreement[4] was entered between ABB and Dickson.[5] Under the subcontract, Dickson agreed to complete various aspects of the contract between ABB and Mobil for construction on the oil platform. Pursuant to the subcontract, Dickson agreed to

---

1. On Wednesday, June 9, 1999, Michael Christovich, counsel for Lexington, telephoned the court to object to the opposition as untimely. The court noted Mr. Christovich's objection and granted counsel leave to file a reply to the opposition.

2. Although Mobil Corporation was named as a Defendant in this litigation, Mobil Producing Nigeria Unlimited is the party identified as contracting with ABB in 1995. (Motion for Summary Judgment, Statement of Uncontested Facts at ¶ I.) The court has been advised that Plaintiff intends to dismiss Mobil Corporation from this suit. (Memorandum in Reply to Dickson and AIU's Opposition to ABB Lummus Global and Mobil Corporation's Motion for Summary Judgment at 2.)

3. ABB and Mobil's Statement of Uncontested Facts at ¶ I. Although the contracting party was ABB Lummus Crest, in May of 1995,

ABB Lummus Crest became ABB Lummus Global, Inc. which is party to this suit. *Id.* at ¶ II.

4. For clarity, the court hereinafter refers to the agreement between ABB and Dickson as the "subcontract."

5. Statement of Uncontested Facts at ¶ III; Lexington's Response to ABB's Statement of Uncontested Facts at ¶ 3. ABB entered the subcontract with Dickson Alusteel Joint Venture, a joint venture between Sirpi Alusteel Construction Limited and Dickson GMP International, Inc. Hereinafter, the contracting party is referred to as "Dickson." The subcontract between ABB and Dickson is the basis for the Motion for Summary Judgment and the Cross Motion for Summary Judgment. The contract entered into by ABB and Mobil is not under dispute in either of these motions.

secure insurance coverage including worker's compensation, employer's liability, and commercial general liability ("CGL") policies.[6] Dickson further agreed to name ABB and Mobil as additional insureds under those insurance contracts.[7] AIU provided worker's compensation and employer's liability insurance to Dickson.[8] Lexington provided Dickson with a Commercial General Liability insurance policy.[9]

To provide accommodations for the workers on the NGL Recovery Project, ABB chartered an accommodations barge, the Venture, which housed approximately 400 workers and had its own crew.[10] The barge was also used for fabrication work.[11] Although the barge was originally moored to the oil platform and a gangway was used for ingress and egress, one of the anchor lines broke and, thereafter, a workboat, the M/V Sir Raphael, was used to transport workers from the barge to the platform.[12]

Plaintiff, Roger Petticrew was an employee of Dickson who was under the supervision of ABB.[13] On or about September 18, 1997, Petticrew was being lifted in a personnel basket from the M/V Raphael to the Barge Venture when the crane operator allegedly released the basket four to five feet above the barge, allegedly causing injuries to Plaintiff.[14]

## LEGAL ANALYSIS

### A. ABB and Mobil's Motion for Summary Judgment

#### I. Contractual provisions; Choice of laws

A federal court sitting in diversity must apply the choice of laws rules that the state in which the federal court sits would

6. The pertinent subcontract language provides:

> Throughout the performance of the Work hereunder, Subcontractor shall carry, at its sole expense, the following minimum insurance coverage in form, type and amount satisfactory to Contractor:

| Coverage | Minimum Requirements |
|---|---|
| a. Workmen's Compensation, Worker's Compensation, Jones Act or applicable similar coverage | Statutory |
| b. Employer's Liability Insurance (bodily injuries) | $1,000,000 per occurrence |
| c. Comprehensive General Liability (including products/completed operations) | |
|    Bodily Injury | $1,000,000 per occurrence |
|    Property Damage | $1,000,000 per occurrence |

Subcontract Agreement No. 08135-2550 between ABB Lummus Global, Inc. and Dickson Alusteel Joint Venture at A–3, A–4.

7. "Subcontractor's insurer shall name Contractor and its client as additional insureds, and shall waive its right of subrogation against Contractor and its client under all insurance policies." Subcontract Agreement at A–4. It is undisputed that ABB was named as an additional insured under the insurance policies. Memorandum in Opposition at 13.

8. Exhibit 6 attached to ABB and Mobil's Motion for Summary Judgment.

9. Exhibit 7 attached to ABB and Mobil's Motion for Summary Judgment.

10. Deposition of Anthony Henley, Sr. at 14.

11. Deposition of Hunley at 20.

12. Deposition of Henley at 16–32.

13. Statement of Uncontested Facts at ¶¶ V, VII; Lexington's Response to Uncontested Facts at ¶ 7.

14. Once the anchor line on the barge broke and the barge drifted, personnel could no longer move from barge to platform via the gangway. To transport personnel, a crane on the barge was used to lift the workers in a personnel basket from the barge and lower them onto the workboat. The workboat was then docked alongside the platform and once more, workers were lifted by a personnel basket onto the platform. Deposition of Anthony Henley, Sr. at 31, 32. It was in the process of returning Petticrew to the barge that the accident occurred.

apply.[15] Thus, this court must apply the choice of laws rules that the Louisiana courts would apply.

Louisiana's conflict of laws provisions are codified in Book IV of the Louisiana Civil Code. The code generally gives contracting parties the freedom to choose what law will apply to contractual disputes. "Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ.Code art. 3537. "All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ.Code art. 3540.

The subcontract between ABB and Dickson contains a choice of laws clause: "[t]his Agreement shall be interpreted and construed in accordance with the laws of the State of Texas without regard to the Conflicts of Laws provisions."[16] Because the parties have contractually agreed to apply Texas law in interpretation of the subcontract, Texas law will be applied unless that law offends the rule set out by La. Civ.Code art. 3540. Thus, an additional two step process is necessary to determine whether the contractual provision is controlling. First, which state's laws would be applied after considering the factors outlined by La. Civ.Code art. 3537?[17] Second, does the contractual provision (in which the parties agreed that Texas law would apply) contravene the public policies of that state?[18]

In determining which state's laws would otherwise apply absent the contractual provision, several factors are to be considered including: (1) relationship of the state to the parties and the dispute, (2) the contacts each state had with the parties and the transaction including where the contract was negotiated, where the contract was formed, and where the contract was performed, (3) the location of the domicile, residence or business of the parties, (4) nature, type and purpose of the contract, and (5) the interest of facilitating "orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other."[19]

Several meetings to discuss the terms of the subcontract between ABB and Dickson were held in ABB's Houston office. Three meetings took place in ABB's Houston office with Dickson representatives for the purpose of discussing the bid on the NGL Recovery Project.[20] Furthermore, negotiations of the subcontract between ABB and Dickson took place in Houston.[21] The final subcontract was then prepared by ABB representatives in Houston.[22] The subcontract was sent to Dickson in Louisi-

---

15. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

16. Subcontract Agreement at A–9, ¶ 25.

17. *See* La. Civ.Code art. 3540.

18. *See* La. Civ.Code art. 3540.

19. La. Civ.Code arts. 3537, 3515.

20. Affidavit of Tom Clapp at ¶ 2. Specifically, on December 23, 1996, Bobby Franton, a Dickson representative from Louisiana, met with an ABB representative in ABB's Houston office to discuss the possibility of bidding on the NGL Recovery Project. On February 10, 1997, another meeting took place in ABB's Houston office with a Dickson representative to discuss the bid. That meeting was continued on February 12, 1997 in Houston.

21. Affidavit of Tom Clapp at ¶ 2. On March 3, 1997, Sirpi and Dickson representatives met in Houston to make a presentation to Mobil representatives for approval as sub-contractors on the NGL Recovery Project. On March 23, 1997, Dickson representatives met in ABB's Houston office to negotiate the final outstanding issues of the subcontract. That meeting was continued on March 26, 1997, in Houston.

22. Affidavit of Tom Clapp at ¶ 2(k).

ana for signature.[23] Although Dickson executed the subcontract at its office in Louisiana,[24] the subcontract was subsequently executed by ABB in Houston. Dickson's President signed the subcontract on April 7, 1997 and returned it to Houston where it was executed by ABB on April 10, 1997.[25] "If an agreement has been reduced to writing, ... an assent to the writing must be manifested. Manifestation of assent 'commonly consists of signing and delivery.'"[26] The parties intended for the subcontract to be signed and, thus, the subcontract was confected once both parties signed the subcontract, manifesting an intent to be bound by the agreement. The bid was discussed in Houston, the subcontract was negotiated in Houston, Dickson signed in Louisiana and ABB signed in Houston.[27]

ABB's Executive Vice–President, an elected officer of the corporation, has his principal place of business in Houston, Texas and is domiciled in the State of Texas.[28] Likewise, Stanley T. Tan, Assistant Treasurer of ABB who is an appointed officer of the corporation, is principally located in ABB's offices in Houston and resides in Texas.[29] Dickson asserts that neither ABB nor Mobil has its principal place of business in Texas and tenders correspondence from the Louisiana Secretary of State setting forth ABB's dealings in Louisiana, its principal corporate office in New Jersey, and its state of incorporation, Delaware.[30] The correspondence, however, does not address ABB's dealings with the State of Texas.

Dickson asserts that the insurance policies were purchased and delivered in Louisiana.[31] However, the place of confection and delivery of the insurance policies has no bearing on the Choice of Laws contractual provision in the subcontract. The insurance policies were purchased by Dickson as required by ABB. However, the relevant inquiry as to whether Texas or Louisiana law applies is controlled by the factors surrounding the confection of the subcontract agreement.

Dickson argues that Petticrew was hired while working in Belle Chasse,. Louisiana. However, Petticrew is not a party to the subcontract between ABB and Dickson and, thus, the location of the injured man (Petticrew) at the time of his hiring is irrelevant to the determination of which state's laws are to be applied to the contractual dispute.

■ Texas was the place of discussing the bid, negotiating the subcontract, and execution of the subcontract by ABB. ABB's representatives did not travel to Louisiana to aid in formation of the subcontract between ABB and Dickson.[32] Texas has more significant contacts with the parties to the subcontract and the dispute than does Louisiana. Accordingly, under the guidelines provided by La. Civ. Code arts. 3515, 3537, and 3540, Texas is the state whose policies would be most seriously impaired if its laws were not followed. Because the parties have stipulated that Texas law is to be applied, that stipulation is controlling.[33]

---

23. Affidavit of Tom Clapp at ¶ 2(k).

24. Affidavit of Bobby Franton at ¶ 7.

25. Affidavit of Tom Clapp at ¶ 2(k).

26. *Scaife v. Associated Air Center, Inc.,* 100 F.3d 406, 410–11 (5th Cir.1996).

27. Dickson asserts that it negotiated the subcontract from its office in Louisiana by telephone. Affidavit of Bobby Franton. However, Dickson does not deny that meetings took place in Houston.

28. Affidavit of Khalid Farid.

29. Affidavit of Khalid Farid.

30. Exhibit G attached to Dickson's Opposition to Motion for Summary Judgment.

31. Memorandum in Opposition at 4; Affidavit of Paul Gariepy; Affidavit of Bobby Franton.

32. Affidavit of Tom Clapp at 2(1).

33. Subcontract Agreement at A–9, ¶ 25.

Because this court has determined that Texas' policies would be most seriously impaired if its laws were not applied, the court does not address the applicability of the Louisiana Oilfield Anti–Indemnity Act.[34]

## II. Insurance Coverage and Indemnity

Dickson agreed to secure insurance coverage including worker's compensation, employer's liability, and commercial general liability ("CGL") policies and to name ABB as an additional insured.[35] AIU provided worker's compensation and employer's liability insurance to Dickson and Lexington provided Dickson with a Commercial General Liability insurance policy.[36]

■ In determining insurance coverage under Texas law, the four corners of the insurance policy are compared with the four corners of the complaint to determine whether the alleged claims are within policy coverage. The duty of an insurer to defend an insured is not determined by the truth or falsity of the allegations against the insured.[37] Thus, the allegations of the complaint must be considered along with the insurance policy provisions.[38] The question of legal responsibility does not have to be answered to trigger a duty to defend.[39]

■ In his original complaint, Plaintiff alleges that defendants are his employers and he is entitled to recover from them for injuries allegedly received in the accident of September 18, 1997.[40] In his supplemental and amended complaints, Plaintiff names ABB and Mobil as additional defendants.[41] Thus, ABB and Mobil are alleged to be alternate employers of Plaintiff.

The alternate employer endorsement issued by AIU to Dickson provides: "Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured."[42] Pursuant to the General Indemnity provision of the subcontract,[43] Dickson has a duty to "protect, defend, indemnify, and hold harmless" ABB and Mobil.[44] In fulfilling that duty, Dickson caused ABB and Mobil to be named additional insureds under the AIU

---

**34.** La.Rev.Stat. Ann. § 9:2780 (West 1999). The court would reach that inquiry only upon a determination that Louisiana's laws would be most seriously impaired if its laws were not applied to the issue at bar. Having determined that Texas is the state with the greatest interest in the dispute, Texas law is to be followed.

**35.** *See supra* notes 6, 7 and accompanying text.

**36.** *See supra* notes 8, 9 and accompanying text.

**37.** *Heyden Newport Chemical Corp. v. Southern General Insurance Co.*, 387 S.W.2d 22, 24 (Tex.1965).

**38.** *Heyden*, 387 S.W.2d at 24.

**39.** *Heyden*, 387 S.W.2d at 24.

**40.** Complaint, Court Document No. 1.

**41.** Supplemental and Amended Complaints, Court Document Nos. 2, 22.

**42.** Alternate Employer Endorsement, attached as Exhibit 6 to Motion for Summary Judgment.

**43.** That indemnity provision provides:

> Subcontractor shall protect, defend, indemnify, and hold harmless Contractor and Owner and their respective Affiliates, partners, affiliates [sic], subsidiaries, agents, employees, directors, officers, representatives, successors and assigns from any and all claims, losses, demands, causes of action and any and all related costs and expenses of every kind and character, including attorneys' fees, arising out of, or in connection with, personal injuries or death of any person(s), or damages to any and all property in any way sustained or alleged to be sustained in connection with or by reason of performance of the Work, or to the extent caused by any negligent act or omission by Subcontractor, its subcontractors or vendors and its and their agents or employees.

Subcontract Agreement at A–5, ¶ 12.1.

**44.** Subcontract Agreement at A–5, ¶ 12.1.

policy issued to Dickson. Accordingly, considering the complaint in light of the policy provisions, ABB and Mobil are assureds under the AIU policy issued to Dickson and are owed a defense in this litigation.

## B. Lexington's Cross Motion for Summary Judgment

In compliance with the subcontract provisions, Dickson obtained Commercial General Liability insurance which was issued by Lexington Insurance Company.[45] The policy provides that the insurer "will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as compensatory damages … because of: bodily injury or property damage to which this insurance applies, caused by an an [sic] occurrence which takes place within the policy territory."[46]

The Commercial Liability Policy also includes certain exclusions. To wit:

II. Exclusions

This insurance does not apply:

A. to bodily injury or property damage expected or intended from the standpoint of the Insured. This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property;

B. to bodily injury or property damage for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. assumed in a contract or agreement that is an incidental contract, provided the bodily injury

or property damage occurs subsequent to the execution of the contract or agreement;

\* \* \* \* \* \*

F. to bodily injury or property damage arising out of the ownership, entrustment, maintenance, operation, use, loading or unloading of:

1. any watercraft owned or operated by or rented or loaned to any Insured, or

2. any other watercraft operated by any person in the course of his employment by any Insured;

\* \* \* \* \* \*

K. to bodily injury to an employee of any Insured arising out of and in the course of the employment by any Insured … This exclusion applies:

1. whether any Insured may be liable as an employer or in any other capacity; and

2. to any obligation to share damages with or repay someone else who must pay damages because of the injury

Exhibit 2 to Lexington's Motion for Summary Judgment.[47]

## I. Bodily injury to an employee of any Insured

■ ABB, in its memorandum in opposition to Lexington's Motion for Summary Judgment, attempts to persuade the court that the "bodily injury to an employee of any insured" exclusion does not relieve Lexington of liability in the case at bar. ABB asserts that because the policy contains a "severability of interest" clause[48],

---

45. *See supra* notes 6–9 and accompanying text.

46. Commercial General Liability Policy Provisions, Exhibit 2 attached to Lexington's Cross Motion for Summary Judgment.

47. The exclusion in subsection F is hereinafter referenced as the "watercraft" exclusion.

The exclusion in subsection K is hereinafter referenced as the "bodily injury to an employee of any insured" exclusion.

48. The severability of interest is derived from the definition of an Insured as follows: "any person or organization qualifying as an Insured in the Persons Insured provision of this

each insured is treated separately and as such, the exclusion does not apply because Plaintiff is not an employee of ABB, the insured.[49] However, the cases relied on by ABB in this assertion all contain contracts containing the "employee of the insured" language.[50] The opposition does not cite any case authority which contains the "**any insured**" language. Plaintiff clearly is the employee of the named insured, Dickson, and thus, the "employee of any insured" language excluded coverage to ABB. The severability of interests clause does not render the "bodily injury to an employee of any insured" clause ambiguous and that clause is controlling.

The "bodily injury to an employee of any insured" exclusion is applicable and excludes coverage by Lexington. Furthermore, this exclusion applies regardless of the alleged source of ABB's liability.[51] The severability of interests clause does not alter the court's determination.

## II. Watercraft exclusion

Because the court has determined that the "bodily injury to an employee of any insured" exclusion is applicable, and this exclusion applies regardless of the alleged source of liability, it is unnecessary for the court to address the issue of whether the "watercraft" exclusion applies.

## III. Exposure of Lexington for Contractual Indemnity

In a last ditch effort, the opposition throws out the concept of exposure to Lexington for contractual indemnity allegedly supplied by ABB to Dickson. However,

IIB of the Commercial General Liability policy provided by Lexington excludes coverage for "bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Although the contract language provides an "exclusion to the exclusion" which states that "this exclusion does not apply to liability for damages: (1) assumed in a contract or agreement that is an incidental contract, provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement," the definition of an incidental contract does not include a contract such as the subcontract entered into by ABB and Dickson.[52] Thus, the court concludes that this "exclusion to an exclusion" is inapplicable. Consequently, Lexington does not owe coverage to ABB for any contractual indemnification ABB may owe to Dickson.

Accordingly;

**IT IS ORDERED** that ABB and Mobil's **Motion for Summary Judgment** be and is hereby **GRANTED** to the extent that AIU owes ABB and Mobil a defense of the claims alleged by Plaintiff in the instant complaint against ABB and Mobil.

**IT IS FURTHER ORDERED** that ABB and Mobil's **Motion for Summary Judgment** be and is hereby **DENIED** to the extent that it seeks coverage and a defense from Lexington Insurance Company.

**IT IS FURTHER ORDERED** that Lexington's Cross **Motion for Summary**

policy. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought except with respect to the limits of the Company's liability." Commercial General Liability policy at 7.

**49.** ABB's Memorandum in Opposition at 5. Although the memorandum did not contain numbered pages, the court refers to the pages by number for ease of identification.

**50.** Memorandum in Opposition at 3, 4.

**51.** Commercial General Liability policy at 3, ¶ K(1); Lexington's Reply Memorandum at 3.

**52.** An incidental contract is defined as "any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement." Commercial General Liability policy at 7.

Judgment be and is hereby **GRANTED** dismissing the third party complaint against Lexington Insurance Company with prejudice.