## BITUMINOUS CASUALTY CORPORATION,
### Appellant,

### v.

### Kathy MAXEY, Individually and as Next Friend of Kristen Tucker, and Kristen Tucker, Appellees.

### No. 01–01–01111–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 22, 2003.

---

Dawn Christine Hansen Woelfel, Sidney H. Davis, Touchstone, Bernays, Johston, Beall & Smith, LLP, Dallas, TX, for Appellant.

Joe Scott Evans, Evans & Kitchens, Groveton, TX, for Appellee.

Panel consists of Justices HEDGES, KEYES, and DUGGAN.*

## OPINION ON MOTION
## FOR REHEARING

EVELYN V. KEYES, Justice.

On this day, the Court considered appellant's motion for rehearing en banc. The motion is **denied.** However, we withdraw our opinion of March 27, 2003, and issue this opinion in its stead.

This is an appeal from a declaratory judgment holding that Bituminous Casualty Corporation ("Bituminous") is obligated to indemnify L & R Timber, Inc., and its employee, Billy Wiggins, for the judgment awarded in cause number 17,746 to Kathy Maxey, individually and as next friend of Kristen Tucker (collectively referred to as "Maxey"). We reverse and render judgment in favor of Bituminous.

### Facts and Procedural Background

Appellant, Bituminous, issued a commercial lines policy to two companies, L & R Timber Co., Inc. and Triple L Express, Inc. That policy included, among other coverages, general liability coverage pursuant to the terms of a commercial general liabil-

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

ity coverage ("CGL") form contained in the policy. The CGL form is a standard insurance industry form widely used across the nation to provide general liability insurance to businesses. Grossly oversimplified, general liability insurance may generally be said to cover an insured's liability for damages accidentally caused to third parties that are not covered under other, more specific types of liability insurance policies—business, automobile, and employer's liability, for example.

On May 26, 1999, Kristen Tucker was turning into a convenience store parking lot when her car was hit from behind by a truck and trailer operated by Terrance Rose. Rose was employed by Triple L, which leased the truck from Mike Lout Trucking and the trailer from L & R. L & R's employee, Wiggins, was responsible for maintenance of both the tractor/trailer and the brakes. Tucker suffered severe injuries resulting in permanent paralysis of her lower extremities. Tucker sued L & R, Triple L, Rose, and Wiggins for damages in the 411th Judicial District Court of Trinity County, Texas, cause number 17,-746, styled *Maxey v. L & R Timber, Inc.*

Bituminous sought a declaratory judgment that it had no duty to defend or indemnify Triple L and L & R. The trial court ruled that Bituminous had the duties to defend and indemnify L & R, but not Triple L. Bituminous appealed to this Court, and, on joint motion of the parties, we reversed and remanded to the trial court without addressing the merits. *Bituminous Cas. Corp. v. L & R Timber Co., Inc.,* No. 01–00–01333–CV, 2001 WL 831664 (Tex.App.-Houston [1st Dist.] July 19, 2001, no pet.) (not designated for publication).

A settlement was subsequently reached between Maxey and Triple L and its employee, Rose, wherein Triple L and Rose were released from liability for payment of the full coverage amount of their automobile liability policy in the amount of $1,500,000. Judgment was then entered on July 13, 2001, against L & R and Wiggins for $1,000,000 (the *Tucker* judgment), the full amount of coverage under the Bituminous CGL policy.

The *Tucker* judgment stated:

The accident occurred when the vehicle Tucker was driving was struck in the rear by a tractor/trailer. The tractor, a 1996 Mack, was owned by Mike Lout Trucking, Inc. and under lease to and being used in the furtherance of the business of [Triple L]. The trailer being pulled by the tractor was a 1989 Nabors Open Box Van owned by [L & R], which was leased to and being operated in the furtherance of the business of [Triple L]. The tractor/trailer was being driven by [Rose], an employee of Triple L, acting in the course and scope of his employment.

[L & R] was responsible for the maintenance and upkeep of the tractor/trailer being operated by [Triple L] at the time of the accident.... [Wiggins] was ... the truck maintenance supervisor/foreman/superintendent.... [Wiggins] was charged with the responsibility of seeing that the tractor and trailer being operated by [Triple L] at the time of the accident were maintained in a safe and roadworthy condition....

The accident occurred because the tractor/trailer was unable to safely stop before striking the vehicle driven by Tucker, due to the fact that three of the six braking systems on the tractor and two of the four braking systems on the trailer were so far out of adjustment as to exceed the minimum standards adhered to by the Federal Motor Carrier Safety Administration, the Department of Transportation and the Texas Department of Public Safety.

[L & R and Wiggins] were negligent . . . in the operation on the roads of an improperly or inadequately maintained tractor and trailer . . .

\* \* \*

Each of these acts or omissions, singularly or in combination with the others was a proximate cause of the accident and of [Tucker's] injuries and damages, in that the tractor and trailer were unable to safely stop due to the poorly maintained brakes.

\* \* \*

It is therefore ORDERED, ADJUDGED and DECREED that Defendants L and R Timber, Inc. and Billy Wiggins are jointly and severally liable to Plaintiffs Kathy Maxey and Kristen Tucker for the total sum of $1,000,000.00 (one million dollars), inclusive of all prejudgment interest.

\* \* \*

The court below found Bituminous had a duty to indemnify L & R and Wiggins for the damages awarded by the judgment, and Bituminous appeals. Bituminous and Maxey have stipulated that they are the only parties having a justiciable interest in the issue of coverage under the CGL policy and that the sole issue presented to the trial court was a duty to indemnify.

### Issues

Bituminous argues in three issues that (1) the trial court erred in declaring that it has a duty to indemnify L & R and Wiggins for the *Tucker* judgment because the auto exclusion clause in the CGL policy precludes coverage for damages for bodily injury arising out of the conduct of "any insured"; (2) the "separation of insureds" clause does not alter the auto exclusion clause so that the exclusion applies only to

damages caused by L & R's own conduct; and (3) the trial court erred in denying Bituminous's motion for judgment on the stipulated facts and by granting judgment in favor of Maxey. Because the first and second issues are interrelated, we address them together.

### Standard of Review

█ We review declaratory judgments under the same standards as other judgments and decrees. *City of Galveston v. Giles*, 902 S.W.2d 167, 170 (Tex.App.-Houston [1st Dist.] 1995, no writ). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Id.* Here, because the case was resolved by stipulated facts, we review the propriety of the declaratory judgment under the standards applied to judgments rendered upon stipulated facts. *See id.* at 170–71; *Unauthorized Practice of Law Comm. v. Jansen*, 816 S.W.2d 813, 814 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (submitting the case on agreed statement and on motion for summary judgment). If reversal is warranted, we render the judgment the trial court should have rendered, unless a remand is necessary for further proceedings. *FDIC v. Projects Am. Corp.*, 828 S.W.2d 771, 772 (Tex.App.-Texarkana 1992, writ denied).

█ Insurance policies are controlled by rules of interpretation and construction applicable to contracts generally. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Id.* Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning. *Western Reserve Life Ins. v. Meadows*, 152

Tex. 559, 261 S.W.2d 554, 557 (1953). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *National Union Fire Ins. Co. of Pittsburgh, Pa.*, 907 S.W.2d at 520. The interpretation of an unambiguous contract is a question of law for the court. *Perry v. Houston Indep. Sch. Dist.*, 902 S.W.2d 544, 547 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.). If an insurance policy is ambiguous, however, it will be interpreted in favor of the insured. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).

## Discussion

*The Auto Exclusion Clause*

Bituminous argues in its first issue that it is entitled to a judgment declaring that it has no duty to indemnify L & R and Wiggins for the *Tucker* judgment because the auto exclusion clause in the CGL policy precludes all coverage for the accident.

The auto exclusion clause in the CGL policy reads as follows:

2. Exclusions

This insurance does not apply to:

. . . .

g. Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to *any insured*. Use includes operation and "loading or unloading".

(Emphasis added.) An "auto" is defined in the CGL policy as "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment."

Section II of the CGL policy, "Who Is an Insured," states, in relevant part, If you are designated in the Declarations as "[a]n organization other than a partnership or joint venture, you are an insured." The section also states,

Each of the following is also an insured:

a. Your "employees," . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

CGL Policy, Section II. Both Triple L and L & R are identified in the "Declarations" as "Named Insureds" on the CGL policy.

■ Under the plain language of the auto exclusion clause and the definitions of "an insured," L & R and Triple L both are *any insureds* for purposes of the auto exclusion clause. The trailer was owned by L & R and both the truck and trailer were maintained by L & R. The truck and trailer were both leased to Triple L and were both operated by Triple L and its employee, Rose. Both L & R and Triple L were held to have proximately caused the accident by their acts and omissions. Both were Named Insureds. Under a plain language reading, since the auto exclusion policy states that the CGL policy does not apply to bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured," the auto exclusion clause applies, excluding coverage for Tucker's injury under the plain language of the CGL policy.

*The Separation of Insureds Clause*

■ Maxey argues, however, that the "Separation of Insureds," or severability of interests, clause in the CGL policy requires that the policy be read as if L & R were the only Named Insured shown on the declarations page. Maxey further argues that, when the policy is read as if

only L & R were the insured, then damages attributable to Triple L are not excluded by the auto exclusion clause; only damages proximately caused by L & R's conduct are excluded; therefore, Bituminous is required to indemnify L & R, the insured, for coverage of the damages caused by Triple L's conduct.

The separation of insureds clause in Section IV of the CGL policy ("Commercial General Liability Conditions") reads as follows:

> 7. Separation of Insureds
>
> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom claim is made or "suit" is brought.

■■■ Maxey is correct in her assertion that, when an insurance policy has a separation of insureds or severability of interests clause, each insured against whom a claim is brought is treated as if it was the only insured under the policy. *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 455–56 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). The intent of the severability clause is to provide each insured with separate coverage, as if each were separately insured with a distinct policy, subject to the liability limits of the policy. *Utica Mut. Ins. Co. v. Emmco Ins. Co.*, 309 Minn. 21, 243 N.W.2d 134, 142 (1976).

■■■ The severability clause serves to provide coverage when there is an "innocent" insured who did not commit the con-

duct excluded by the policy. *State Farm Fire & Cas. Ins. Co. v. Keegan*, 209 F.3d 767, 769 (5th Cir.2000) (construing Texas law; citing *Walker v. Lumbermens Mut. Cas. Co.*, 491 S.W.2d 696 (Tex.Civ.App.-Eastland 1973, no writ)). In *Walker*, for example, the court of appeals held that an exclusion that denied coverage for intentional acts of "the insured" did not apply to the father of the son who committed the intentional acts; therefore, the father was not denied coverage under the insurance policy. *Walker*, 491 S.W.2d at 699. Only the father had been sued for acts of the son; if the son had been sued and the judgment had been against the son, the son would not have been covered. *Id.* at 698.

Here, Maxey asks us to find, similarly, that, because of the separation of insureds clause, the auto exclusion in L & R's policy excludes only payment for damages arising out of L & R's negligence, not payment of damages arising out of Triple L's negligence.[1] If "any insured" in the auto exclusion clause is construed only as "the insured who is making the claim"—here, L & R—damage caused by anyone else—such as Triple L—is *not* excluded from coverage by the auto exclusion clause. L & R is innocent of Triple L's conduct and the damages caused by that conduct.

Maxey further contends that, unless the separation of insureds clause restricts the exclusion of coverage of claims against "any insured" to the exclusion of coverage of claims against the particular insured seeking coverage, namely L & R, the CGL policy is ambiguous as to whose conduct is excluded, and the exclusion clause must, therefore, be construed in favor of the insured. *See Grain Dealers*, 943 S.W.2d

---

1. Although a settlement was reached between Triple L and Maxey for the limits of Triple L's automobile liability policy, because the judg-

ment assigns joint and several liability to L & R and Wiggins, both are liable for all damages.

at 458 (stating that an insurance contract that is subject to more than one reasonable interpretation is ambiguous, and interpretation that most favors coverage for insured will be adopted). Maxey refers us to cases from other states which have held that a separation of insureds or severability of interests clause requires that the term "any insured" in an exclusion in an insurance policy be interpreted to mean only the insured who is seeking coverage.[2]

Bituminous replies that the overwhelming majority rule holds that the use of the phrase *"any insured"* in an exclusion negates coverage for *all insureds*, despite the inclusion of a separation of insureds clause.[3] Bituminous argues that, even if we read "any insured" as "L & R" for purposes of determining the insured against whom a claim is being made, as the separation of insureds clause requires, it does not follow that we must substitute "the insured" for "any insured" in interpreting the auto exclusion clause.

### Effect of a Separation of Insureds Clause on Exclusions

This is apparently a case of first impression under Texas law regarding the application of a separation of insureds clause to a policy provision that refers to *"any insured."* However, Texas courts have construed the applicability of a separation of insureds clause to a policy provision that refers to *"the insured."*

In *Commercial Standard Insurance Co. v. American General Insurance Co.*, 455 S.W.2d 714 (Tex.1970), the Texas Supreme Court considered the effect of a similar

---

**2.** *See West Am. Ins. Co. v. AV & S*, 145 F.3d 1224, 1229 (10th Cir.1998) (stating "that because the Separation of Insureds clause treats each named insured separately as the only insured, the term 'any insured' in the Auto Exclusion Clause only applies to the single insured that actually owned the vehicle"); *Transport Indem. Co. v. Wyatt*, 417 So.2d 568, 571 (Ala.1982) (agreeing with the trial court that the term "any insured" is ambiguous; interpreting "any insured" "to mean only singularly 'any one of the insureds' "); *Worcester Mut. Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158, 161 (1986) (holding that there was coverage even though the court's interpretation of the policy made the word "any" in the auto exclusion clause superfluous; stating that interpreting "any" to mean otherwise would "render the entire severability of insurance clause meaningless"); *Premier Ins. Co. v. Adams*, 632 So.2d 1054, 1056–57 (Fla.Dist.Ct. App.1994) (following *Worcester*).

**3.** *See, e.g., Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1336 (11th Cir.1998) (stating that "[a] policy jointly covers all insured parties if [an excluded action or event] on behalf of *any* insured precludes coverage"); *Michael Carbone, Inc. v. General Accident Ins. Co.*, 937 F.Supp. 413, 420–22 (E.D.Pa.1996) (discussing cases and holding that an "any insured"

exclusion "unambiguously expresses a contractual intent to create joint obligations and precludes coverage to innocent co-insureds"); *California Cas. Ins. Co. v. Northland Ins. Co.*, 48 Cal.App.4th 1682, 56 Cal.Rptr.2d 434, 441–42 (1996) (concluding that the exclusion applied because "[t]he unambiguous intent is to exclude coverage for *any* insured, even if liability of that insured does not arise from his or her personal ownership or use of the [vehicle]"); *Oaks v. Dupuy*, 653 So.2d 165, 168–69 (La.Ct.App.1995) (finding that "any insured" is unambiguous); *Gorzen v. Westfield Ins. Co.*, 207 Mich.App. 575, 526 N.W.2d 43, 45 (1994) (looking to the underlying cause of the injury to determine coverage and not to the theory of liability, the court held that the exclusionary clause was unambiguous, even though the term "an insured" was used in the clause, and that the clause did apply to exclude coverage); *American Family Mut. Ins. Co. v. Copeland-Williams*, 941 S.W.2d 625, 629 (Mo. Ct.App.1997) (holding that "[t]he use of the phrase 'any insured' makes the exclusionary clause unambiguous even in light of the severability clause"); *c.f. Taryn E.F. by Grunewald v. Joshua M.C.*, 178 Wis.2d 719, 505 N.W.2d 418, 422 (App.1993) (holding that use of the term "any insured" "unambiguously precludes coverage to all persons covered by the policy if any one of them engages in excludable conduct").

"severability of interests" clause on an employee exclusion for "the insured." There, a general contractor's employees were injured when a truck crane owned and operated by an insured subcontractor collapsed. The general contractor was an additional insured under the subcontractor's policy. The policy contained an exclusion for bodily injury to any employee of "the insured," and a severability of interests clause. The subcontractor demanded that American General assume liability under the insurance policy.

The Court held that the exclusion did not apply to the subcontractor because of the severability of interests clause, and therefore, the insurance policy did afford coverage to the subcontractor. *Id.* at 721–22. In so holding, the court wrote:

> the term "the insured" as used in this policy must be examined by first applying the "severability of interests" test. "The insured" does not refer to all insureds; rather the term is used to refer to each insured as a separate and distinct individual apart from any and every other person who may be entitled to coverage thereunder. When a claim is made against one who is an "insured" under the policy, the latter is "the insured" for the purpose of determining the company's obligations with respect to such claim.

*Id.* at 721. Although the general contractor was "an insured" under the policy, the injury to the general contractor's employees did not fall within the exclusion for bodily injury to employees of "the insured," when "the insured" requesting coverage was the subcontractor who was not the injured employees' employer. *Id.* at 715, 721–22. However, the court did not address the application of a severability of interests, or separation of insureds, clause to an exclusion referencing "any insured."

In *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185 (Tex.2002), the Texas Supreme Court again interpreted the separation of insureds clause in a commercial liability policy. The separation of insureds clause was being applied to an expected or intended injury exclusion which again contained the term "the insured." *Id.* at 188. The Court determined that the separation of insureds clause applied to the exclusion, and therefore King was the only insured excluded. *Id.*

We have found only one reported decision that has construed the term "any insured" under Texas law in the context of an exclusion in an insurance policy containing a separation of insureds clause. The Federal District Court for the Eastern District of Louisiana, applying Texas law, agreed with the majority rule in holding that, despite the separation of insureds or severability of interests clause, the exclusion of "any insured" meant the exclusion of all persons named as insureds in the policy, not just the insured making the claim. *Petticrew v. ABB Lummus Global, Inc.*, 53 F.Supp.2d 864, 871 (E.D.La.1999).

In *Petticrew,* Dickson GMP International, a subcontractor under a contract between ABB Lummus Global, Inc. and Mobil Corporation for construction of an oil platform, had agreed to secure insurance coverage for the project, including a CGL policy, and to name ABB and Mobil as additional insureds. The CGL policy excluded liability for damages for bodily injury arising out of the use of any watercraft "owned or operated by or rented or loaned to any Insured" or "operated by any person in the course of his employment by any Insured." *Id.* at 870. Petticrew, an employee of Dickson who was under the supervision of ABB, was being lifted in a personnel basket to a barge from a workboat used to transport workers from the drilling platform to the barge when the

operator released the basket too soon, injuring him. ABB asserted that, because the policy contained a severability of interests clause, each insured must be treated differently; thus, since Petticrew was not an employee of ABB, the insured that caused the accident, the exclusion of damages incurred by "any insured" did not apply, and Petticrew's injuries were covered liabilities of the policy. *Id.* at 871. The court held, however, that Petticrew was "clearly the employee of the named insured, Dickson, and thus, the 'employee of any insured' language excluded coverage to ABB." *Id.*

The *Petticrew* court did not explain its reasoning, but it seems clearly to have relied on a natural reading of the plain language of the exclusion and the definition of "*an* Insured" in the policy as "*any* person or organization qualifying as an Insured in the Person Insured provision of this policy." *Id.* at 870 n. 48 (emphasis added). Likewise, Section II of the CGL policy in this case, defining "*an* insured," specifically states, "If you are listed in the Declarations as an organization …, you are *an insured*"; and it specifically includes within the definition of "an insured" the employees of an insured acting within the scope of their employment. (Emphasis added). The auto exclusion clause expressly excludes coverage for " 'bodily injury' … arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' … owned or operated by or rented or loaned to *any insured.*" (Emphasis added).

▇▇▇▇ The language of a contract should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 529 (Tex.1987). Every clause of a contract has some effect; and a reasonable interpretation is prefera-

ble to one that is unreasonable. *Ace Ins. Co. v. Zurich Am. Ins. Co.,* 59 S.W.3d 424, 428 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). In construing a contract, the court considers how a reasonable person would have used and understood the language by taking into account the circumstances under which the contract was negotiated and the purposes the parties intended to accomplish. *Mobil Exploration & Producing U.S., Inc. v. Dover Energy Exploration, L.L.C.,* 56 S.W.3d 772, 776 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

▇▇▇▇ Exceptions and rules of limitation in an insurance contract are strictly construed against the insurer. *Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977). Specifically, the court must adopt the construction of an exclusionary clause urged by the insured unless that construction is unreasonable, even if the construction urged by the insurer is more reasonable or appears to be a more accurate reflection of the parties' intent. *National Union v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991); *Glover,* 545 S.W.2d at 761. However, the plain language of an insurance policy, like that of any other contract, must be given effect when the parties' intent may be discerned from that plain language. *Glover,* 545 S.W.2d at 761. It is only when the language is ambiguous—*i.e.,* subject to two or more reasonable interpretations—that the construction which affords coverage must be adopted. *Id.*

▇▇▇▇ A party's reasonable expectation of coverage is a question of law, not fact. *California Cas. Ins. Co.,* 56 Cal. Rptr.2d at 444. To determine whether coverage is consistent with an insured's reasonable expectations, the court must interpret the language in context with respect to its function in the policy. *Id.* The controlling interpretation of individual

words not defined in an insurance policy is one which the ordinary person would give to the phrase as a whole, taken in the context of the whole policy. *Tumlinson v. St. Paul Ins. Co.*, 786 S.W.2d 406, 408 (Tex.App.-Houston [1st Dist.] 1990, writ denied).

■ Here, nothing in the CGL policy indicates that "any insured" is to be construed in the text of the policy differently from the way "an insured" is defined in the declarations; therefore, we find that they should be construed the same. The only effect of the separation of insureds clause is to alter the meaning of the term "the insured" to reflect who is seeking coverage. *See American Nat'l Fire Ins. Co. v. Estate of Fournelle*, 472 N.W.2d 292, 294 (Minn.1991); *Michael Carbone, Inc.*, 937 F.Supp. at 420. The effect of the separation of insureds clause on a particular exclusion in an insurance contract thus depends on the terms of that exclusion. *Petticrew*, 53 F.Supp.2d at 871; *Stewart Title Guar. Co. v. Kiefer*, 984 F.Supp. 988, 996 (E.D.La.1997).[4] If the exclusion clause uses the term "the insured," application of the separation of insureds clause requires that the term be interpreted as referring only to the insured against whom a claim is being made under the policy. *Commercial Standard Ins. Co.*, 455 S.W.2d at 721. If, however, the exclusion clause uses the term "any insured," then application of the separation of insureds clause has no effect on the exclusion clause; a claim made against any insured is excluded. *Petti-*

*crew*, 53 F.Supp.2d at 871; *Michael Carbone, Inc.*, 937 F.Supp. at 418, 420.

■ To hold that the term "*any* insured" in an exclusion clause means "*the* insured making the claim" would collapse the distinction between the terms "the insured" and "any insured" in an insurance policy exclusion clause, making the distinction meaningless. It would also alter the plain language of the clause, frustrating the reasonable expectations of the parties when contracting for insurance. We should not adopt an unreasonable construction of an insurance contract. *Hudson*, 811 S.W.2d at 555; *Glover*, 545 S.W.2d at 761.

Moreover, construing the term "any" the same as the word "the" in an exclusion clause when an insurance policy contains a separation of insureds or severability of interests clause would require a tortured reading of the terms of the policy. *See Oaks*, 653 So.2d at 168 (noting that the unambiguous term "any insured" "should not be misshaped through an overreading" of the separation of insureds clause). It would also expand liability beyond that bargained for by a reasonable person who followed the plain language of the policy and would invite collusion among insureds, whereby any one insured could make a claim for coverage of damages caused by any other insured.[5] We should not give the terms of a contract such an expansive reading without a definite expression of the parties' intent that we do so. *See Reilly*, 727 S.W.2d at 529–30.

---

**4.** *See also Williamson v. Vanguard Underwriters Ins. Co.*, No. 14-97-00276-CV, slip op. at 12, 1998 WL 831476 (Tex.App.-Houston [14th Dist.] Dec. 3, 1998, no pet.) (not designated for publication) (discussing the difference between "the insured" and "any insured" in the context of an exclusion referencing "the insured" and opining, "Vanguard could also limit the extent of its coverage by replacing

'the insured' with 'any insured' in the intentional injury exclusion.").

**5.** In general, a commercial auto liability policy—such as that under which Maxey recovered the damages assessed against Triple L—covers the type of risks presented by the commercial operation of motor vehicles.

We hold that, because the auto exclusion clause in Bituminous' CGL policy excludes coverage for " 'bodily injury' ... arising out of the ownership, maintenance, use or entrustment to other of any ... 'auto' ... owned or operated by or rented or loaned to *'any insured,'* " the clause excludes coverage for bodily injury arising out of any conduct within the scope of the exclusion by any entity or person insured by the policy, regardless of which insured is seeking coverage. Since Tucker's injury arose from maintenance of the truck and trailer by L & R, a named insured, and its employee Wiggins, also an insured, as well as from the operation of the vehicle by Rose, an employee of Triple L, also a named insured, the auto exclusion clause applies. Under the plain language of the auto exclusion clause, Bituminous has no duty to indemnify L & R or Wiggins for liability for Tucker's injuries, regardless of whether Tucker's injuries were caused by L & R's conduct, or Triple L's, or both. Bituminous has no duty to indemnify any insured because the auto exclusion clause excludes all of the insureds from coverage, regardless of which insured makes a claim against the policy.

*Concurrent Causation*

 Finally, Maxey makes an argument for coverage under the "concurrent causation" doctrine. The "concurrent causation doctrine" states that an insurer escapes liability through an exclusion in a policy "only when a covered peril and an excluded peril concurrently cause a loss.... Where a loss, however, is caused by a covered peril and an excluded peril that are independent causes of the loss, the insurer is liable." *Guaranty Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir.); *see also Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyd's Ins. Co. of Tex.*, 875 S.W.2d 788, 791 (Tex.App.-Eastland 1994, writ denied); *Centennial Ins. Co. v. Hartford Acc. & Indem. Co.*, 821 S.W.2d 192, 194 (Tex.App.-Houston [14th Dist.] 1991, no writ).

 Maxey contends that L & R's negligent maintenance of the brakes on the truck and the trailer and the operation of the truck by Rose were separate and independent causes of Tucker's injuries. The judgment against L & R and Wiggins found that the accident was proximately caused both by Rose's failure to stop in time and by the brakes of both the truck and the trailer being out of proper adjustment because of L & R's and Wiggins's negligence in maintaining the brakes, which contributed to Rose's inability to stop. Thus L & R's and Wiggins's negligent maintenance and Triple L's negligent operation of the truck were not *separate and independent* causes of the accident.

We sustain Bituminous's first and second issues.

Because our ruling on Bituminous's first and second issues is dispositive of this case, its third issue is moot.

### Conclusion

We reverse the judgment of the trial court and render judgment that Bituminous is not obligated to indemnify L & R Timber, Inc., and its employee, Billy Wiggins.